Corinne S. Koshland v. Commissioner. Eleanor H. Koshland v. Commissioner. Walter A. Haas v. Commissioner. Estate of John C. Altman, Deceased, Bess G. Altman and Daniel E. Koshland, Executors v. Commissioner. Robert J. Koshland v. Commissioner. Ruth H. Lilienthal v. Commissioner. Fannie K. Haas v. Commissioner. Walter S. Heller v. Commissioner *
Koshland v. Commissioner
Docket Nos. 111302, 111311, 111303, 111312, 111305, 111313, 111306, 112711.
United States Tax Court
1943 Tax Ct. Memo LEXIS 65; 2 T.C.M. (CCH) 972; T.C.M. (RIA) 43472; October 30, 1943
*65 Willard L. Ellis, Esq., 615 Russ Bldg., San Francisco, Calif., for the petitioners. Harry R. Horrow, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: These proceedings, consolidated for hearing, are for the redetermination of deficiencies in income tax for 1938 as follows: Docket No.
Petitioner
Deficiency
111302
Corinne S. Koshland
$ 416.93
111303
Eleanor H. Koshland
896.56
111305
Walter A. Haas
389.12
111306
Estate of John C. Altman
72.71
111311
Robert J. Koshland
222.63
111312
Ruth H. Lilienthal
1,226.03
111313
Fannie K. Haas
716.81
112711
Walter S. Heller
3,690.47
Some of the issues raised by the petitioners have been abandoned and others have been disposed of by stipulation. The sole issue presented for the determination of the Tax Court is whether the distributions of certain voting trust certificates to petitioners by the Santa Inez Company were taxable dividends to the extent of the fair market value of such certificates at the date of receipt. Findings of Fact Petitioners, including John C. Altman prior to his decease, were in 1938 residents of San Francisco, California, or of the immediate vicinity. They *66 all filed their income tax returns for 1938 with the collector of internal revenue for the first district of California at San Francisco. During 1938 the Santa Inez Company, hereinafter referred to as Santa Inez, was a California corporation with its principal place of business at San Francisco. Its issued and outstanding capital stock consisted of 2,000 shares of common stock. Each of the petitioners owned 80 shares of Santa Inez except John C. Altman and Robert J. Koshland, who each owned 40 shares, and Walter S. Heller, who owned 160 shares. During 1938 Santa Inez owned certain voting trust certificates for 1,074 shares of stock in Sacramento Medico Dental Building Company, a California corporation. Of these shares all but 66 were acquired by Santa Inez at no cost in connection with the acquisition of first mortgage bonds of the Building Company, said 66 shares having been purchased for cash by Santa Inez at a total cost of $468.97. At January 1, 1938, Santa Inez had no accumulated earnings or profits. Its earnings and profits for 1938 available for the payment of dividends, exclusive of earnings and profits, if any, attributable to the distribution in kind of the voting trust *67 certificates, as hereinafter referred to, amounted to $10,074.05. The board of directors of Santa Inez on October 4, 1938, adopted the following resolution: RESOLVED that there be distributed on this date, pro rata, in kind, to the shareholders of this Corporation on this date, voting trust certificates for 1,074 shares of the capital stock of Sacramento Medico Dental Building Company, a California corporation; * * * Pursuant to the above resolution there were distributed to each of the petitioners voting trust certificates for shares of stock of the Sacramento Medico Building Company as follows: Corinne S. Koshland
42.96
Eleanor H. Koshland
42.96
Walter A. Haas
42.96
John C. Altman
21.48
Robert J. Koshland
21.48
Ruth H. Lilienthal
42.96
Fannie K. Haas
42.96
Walter S. Heller
85.92
On December 15, 1938, pursuant to a resolution of the board of directors of Santa Inez, there was paid to and received by each of the petitioners as a stockholder of Santa Inez a cash dividend of $6.25 per share. No dividends or distributions were made by Santa Inez to any of the petitioners herein during 1938 other than the aforementioned distributions of voting trust certificates *68 and cash. The fair market value on October 4, 1938, of each share of stock of the Building Company represented by voting trust certificates was $27.50. None of the distributions made by Santa Inez to its stockholders during 1938 was in partial or complete liquidation nor out of increase in value of property accrued before March 1, 1913. Immediately prior to the distribution by Santa Inez to its stockholders on October 4, 1938, of voting certificates representing an aggregate of 1,074 shares of Building Company stock, the adjusted basis to each stockholder of Santa Inez of his or her Santa Inez stock amounted to $10.501365 per share. In their income tax returns for 1938 the petitioners reported as taxable income received from the distributions made by Santa Inez only a part of the sum of the cash and fair market value of the voting trust certificates received by them. The respondent has determined the deficiencies upon the theory that each petitioner received taxable income from the distributions equalling the sum of the cash and fair market value of the voting trust certificates received. Opinion The respondent submits that the question presented by these proceedings is whether *69 he erred - * * * in determining that the increase in value of certain voting trust certificates, distributed as a dividend by the Santa Inez Company to petitioner stockholders, should be included in the earnings and profits of said corporation for purposes of determining the taxability of said distribution to petitioners? He further states: * * * The sole issue presented for determination is whether the distributions in question are taxable as dividends only to the extent of the proportionate share of each stockholder in the amount of $10,074.05 [net earnings available for the payment of dividends in 1938], as contended by petitioners. * * * The statute involved is the Revenue Act of 1938, which reads in material part as follows: SEC. 115. DISTRIBUTIONS BY CORPORATIONS. (a) Definition of Dividend. - The term "dividend" when used in this title (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of *70 the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. (c) Source of Distributions. - For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113. * * * * *
(d) Other Distributions from Capital. - If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable *71 in the same manner as a gain from the sale or exchange of property. The petitioners as stockholders of Santa Inez received during the taxable year as distribution of voting trust certificates of the Sacramento Medico Dental Building Company stock and a cash dividend of $6.25 per share. It is stipulated that the earnings of Santa Inez for 1938 available for the payment of a dividend amounted to $10,074.05. The petitioners do not deny that they received taxable income from the two distributions equalling their aliquot part of the $10,074.05 available for distribution. They do contend, however, that as to the excess distribution received they are taxable only upon the excess of the amount received over their investment in shares of stock of Santa Inez, the basis of which has been stipulated to be $10.501365 per share. It is the contention of the respondent that upon the distribution by Santa Inez of the voting trust certificates which had a stipulated fair market value at the date of distribution of $27.50, Santa Inez realized taxable income represented by the difference between the total value of the voting trust certificates distributed and the cost to it of the Building Company *72 shares, namely, $468.97, and that by reason of the distributions the stockholders of Santa Inez received taxable income of $10,074.05 plus the profit realized by Santa Inez from the distribution. The contention made by the respondent in these proceedings is like that made in . We rejected his contention there upon the authority of . He made the same contention in . We there held that the excess of fair market value of an asset distributed in kind over its cost to the distributing corporation, petitioner's wholly owned foreign subsidiary, did not augment earnings or profits of the subsidiary. It appears to us that the facts in these proceedings bring them squarely within the purview of section 115 (d) of the Revenue Act of 1938, quoted above. The excess of the distributions received by each petitioner is to be taxed "in the same manner as a gain from the sale or exchange of property." Decisions will be entered under Rule 50.